RICE v ZIMMER MANUFACTURING COMPANY

Docket No. 99729. Submitted March 14, 1989, at Detroit. Decided
June 21, 1989.

Cynthia Rice was injured in a traffic accident and was treated by
Dr. John V. Corbett. Her last office visit was on August 8, 1983.
On September 2, 1983, she consulted another doctor. On Sep-
tember 26, 1983, a pin in her leg, manufactured by Zimmer
Manufacturing Co. and placed there by Dr. Corbett, broke. On
September 13, 1985, Rice brought an action in the Macomb
Circuit Court against Zimmer Manufacturing Co., Dr. Corbett
and another, alleging malpractice against Dr. Corbett. The
court, Michael D. Schwartz, J., denied Dr. Corbett's motion for
summary disposition on the ground that the action against him
was barred by the two-year period of limitation. Dr. Corbett
appealed by leave granted.

The Court of Appeals *held:*

An action for malpractice against a state licensed profes-
sional or pseudoprofessional must be filed within two years of
the time that person discontinues treating or otherwise serving
the plaintiff in a professional or pseudoprofessional capacity,
regardless of the time the plaintiff discovers or otherwise has
knowledge of the claim. Plaintiff's assertion that she did not
decide to discontinue treatment with Dr. Corbett until the pin
broke on September 26, 1983, is immaterial.

Reversed.

LIMITATION OF ACTIONS — MALPRACTICE.

An action for malpractice against a state licensed professional or
pseudoprofessional must be filed within two years of the time
that person discontinues treating or otherwise serving the
plaintiff in a professional or pseudoprofessional capacity, re-
gardless of the time the plaintiff discovers or otherwise has

REFERENCES

Am Jur 2d, Limitation of Actions §§ 103, 146; Physicians, Surgeons,
and Other Healers §§ 316, 318-321.

When statute of limitation commences to run against malpractice
action against physician, surgeon, dentist, or similar practitioner.
80 ALR2d 368.

knowledge of the claim (MCL 600.5805, 600.5838[1]; MSA 27A.5805, 27A.5838[1]).

*John R. Urso & Associates, P.C.* (by *Mary Roy Kelly* and *John R. Urso*), for plaintiff.

*Siemion, Huckabay, Bodary, Padilla & Morganti, P.C.* (by *Raymond W. Morganti*), for defendant Corbett.

Before: WAHLS, P.J., and REILLY and G. S. AL-LEN,* JJ.

PER CURIAM. Defendant John V. Corbett, M.D., appeals by leave granted from a March 12, 1987, order of the Macomb Circuit Court denying his motion for summary disposition filed under MCR 2.116(C)(7) on the ground that this lawsuit is barred by the two-year period of limitation applicable in medical malpractice cases. We reverse.

The record reveals that plaintiff, Cynthia Rice, was involved in a collision between an automobile and a motorcycle on August 1, 1982, from which she sustained a fractured right femur and other injuries. She was taken to defendant St. Joseph Hospital, West, for treatment, where Dr. Corbett performed an open reduction of the right femur and inserted an "intermedullary Schneider rod" which had been manufactured and sold by defendant Zimmer Manufacturing Company. Thereafter, plaintiff remained under the postsurgical care of Dr. Corbett, receiving treatment as necessary until August 8, 1983, on which date she made her last office visit. In Dr. Corbett's records for plaintiff's August 8, 1983, office visit, he wrote: "In view of the patient's decrease in symptoms I am going

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

to recommend six months of additional treatment with the EBI unit and I'd like to see the patient three months from now for a clinical exam."

On September 2, 1983, plaintiff consulted with Edward Nebel, M.D., an orthopedic surgeon on the staff of Mercy Hospital in Port Huron. Plaintiff testified at her deposition that she consulted with Dr. Nebel for the purpose of obtaining a second opinion and that as of that date she had not yet decided to stop seeing Dr. Corbett and start seeing Dr. Nebel with regard to future treatment of her leg. On September 26, 1983, while plaintiff was shopping at Lakeside Mall, the rod which Dr. Corbett had inserted broke. Plaintiff telephoned Dr. Nebel's office from the mall and was advised to go to Mercy Hospital in Port Huron. At the hospital, Dr. Nebel removed the broken rod and inserted a new one. Thereafter, plaintiff treated with Dr. Nebel. She testified at her deposition that it was not until the rod broke on September 23, 1983, that she decided to stop treating with Dr. Corbett and start treating with Dr. Nebel.

Plaintiff filed the present malpractice lawsuit on September 13, 1985, alleging negligence on the part of Dr. Corbett, negligence and breach of warranty on the part of Zimmer Manufacturing Company, and liability on the part of St. Joseph Hospital, West, based on its negligence in providing a defective rod and based on Dr. Corbett's negligence as a staff physician. Dr. Corbett moved for summary disposition under MCR 2.116(C)(7), asserting that the suit was filed outside the applicable two-year period of limitation. The trial court denied Dr. Corbett's motion, finding that a question of fact existed regarding plaintiff's last day of treatment with Dr. Corbett, and this Court granted Dr. Corbett's application for leave to appeal. On appeal, Dr. Corbett argues that the trial court erred

in failing to find that plaintiff's action is barred by the two-year period of limitation. We agree.

In *Stapleton v City of Wyandotte,* 177 Mich App 339, 342-344; 441 NW2d 90 (1989), a case not dissimilar from the instant action, this Court stated:

> The period of limitation for a malpractice action is set forth in MCL 600.5805; MSA 27A.5805:
>
> "(1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the period of time prescribed by this section.
>
> *  *  *
>
> "(4) Except as otherwise provided in this chapter, the period of limitations is 2 years for an action charging malpractice."
>
> The accrual of plaintiff's claim in this case is determined under MCL 600.5838(1); MSA 27A.5838(1), as it appeared prior to its amendment in 1986:[3]
>
> "A claim based on the malpractice of a person who is, or holds himself out to be, a member of a state licensed profession . . . accrues at the time that person *discontinues treating or otherwise serving the plaintiff* in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim. [Emphasis added.]"
>
> What constitutes "treating or otherwise serving" under § 38(1) is a matter of statutory construction and is a question of law for the courts. *Coddington v Robertson,* 160 Mich App 406, 410; 407 NW2d 666 (1987). The essence of that phrase implies that the cessation of an ongoing physician-patient relationship marks the point at which the period of limitation begins to run. *Pendell v Jarka,* 156 Mich 405, 409-410; 402 NW2d 23 (1986), lv den 428 Mich 880 (1987).

Regarding the purpose of periods of limitations and decisions whether to grant motions for summary disposition on the basis of the expiration of an applicable period of limitation, this Court has stated:

"The underlying purposes behind statutes of limitation are to require that complaints be filed within a reasonable time so that the opposing parties have a fair opportunity to defend, to relieve the court system from dealing with stale claims, and to protect potential defendants from protracted fear of litigation. *Bigelow v Walraven,* 392 Mich 566, 576; 221 NW2d 328 (1974). In considering a motion for accelerated judgment based on a statute of limitations, the trial court is to consider the pleadings, affidavits, depositions, admissions and documentary evidence submitted by the parties. MCR 2.116(G)(5). The motion may not be granted if there exist material fact issues in dispute regarding discovery of the asserted malpractice. *Kelleher v Mills,* 70 Mich App 360, 365; 245 NW2d 749 (1976). But if the facts are not in dispute, the issue whether the claim is statutorily barred becomes one of law for the court. *Smith v Sinai Hosp,* 152 Mich App 716, 724-725; 394 NW2d 82 (1986). See also *Schalm v Mt Clemens Gen Hospital,* 82 Mich App 669, 672; 267 NW2d 479 (1978). [*Coddington, supra,* pp 409-410.]"

---

[3] MCL 600.5838(1); MSA 27A.5838(1), as amended by 1986 PA 178, provides, in pertinent part:

"[A] claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim."

---

Plaintiff in this case asserts that the two-year period of limitation does not bar her action, filed on September 13, 1985, against Dr. Corbett because "there was no cessation of the [physician-patient] relationship before September 26, 1983,"

the day on which the rod in plaintiff's bone broke and, according to plaintiff's appellate brief, the day on which "a conscious, affirmative, decision was made to change treating physicians." Dr. Corbett, on the other hand, asserts that the two-year period of limitation bars plaintiff's action because the last day he treated or otherwise served plaintiff was August 8, 1983, and because his suggestions that plaintiff return in three months for a clinical examination "is of no significance to the statute of limitations, where it is clear that [plaintiff] in fact did not ever return or in any way seek . . . medical assistance after August 8, 1983."

This is not a case in which the plaintiff actually made an appointment for treatment with a doctor and then failed to appear at the appointed time because she received emergency medical care for her problem at a hospital the day before the appointment. *Thomas v Golden,* 51 Mich App 253; 214 NW2d 907 (1974), modified 51 Mich App 693; 214 NW2d 907 (1974), aff'd without adopting reasoning 392 Mich 779; 220 NW2d 677 (1974). Nor is this a case in which neither the physician nor the plaintiff intended a long-standing physician-patient relationship to end at the time the plaintiff's son, on the plaintiff's behalf, telephoned the plaintiff's physician approximately one month after the plaintiff's last office visit and discussed the plaintiff's condition. *Shane v Mouw,* 116 Mich App 737; 323 NW2d 537 (1982). Instead, this is a case in which the plaintiff, at the time she was last treated by the defendant doctor, was advised to make an appointment for a checkup in three months, and in which the plaintiff claims that she did not subjectively decide to treat with a new doctor until approximately six weeks after the date she was treated by the defendant doctor. Apparently, plaintiff would have us hold that, for

purposes of the two-year period of limitation in medical malpractice cases, the two-year period should not begin to run until either the date suggested by the physician for the patient's next office visit has passed or the patient subjectively decides to terminate the physician-patient relationship. The former position is untenable because the mere suggestion that a patient return for further care or treatment does not itself constitute treatment or professional service, see *Stapleton, supra*,[1] and the latter position is untenable because to allow a plaintiff to delay the application of the two-year period of limitation simply by claiming that he or she had not yet subjectively decided to discontinue treatment with the defendant doctor on a specified date would defeat the very purposes of periods of limitation, i.e., the purposes of requiring that complaints be filed within a reasonable time so that the opposing parties have a fair opportunity to defend, to relieve the court system from dealing with stale claims, and to protect potential defendants from the protracted fear of litigation. *Coddington, supra*, pp 409-410.

Accordingly, since there was no occurrence following August 8, 1983, the day Dr. Corbett last treated plaintiff, showing that Dr. Corbett treated or otherwise served plaintiff after that date, and since the applicable two-year period of limitation for medical malpractice actions begins to run at the time the defendant discontinues treating or otherwise serving the plaintiff and not when the

---

[1] In *Stapleton, supra*, p 344, this Court noted that "[t]he advice given by . . . [a] physician to plaintiff on the date of her discharge from the hospital to make an appointment for a checkup in two weeks did not alone serve to extend the physician-patient relationship shared by plaintiff" and the hospital staff physicians. Thus, in *Stapleton*, the two-year period of limitations was determined to have begun to run on the date of plaintiff's discharge from the hospital, the date of her last treatment, and not on the date two weeks after her discharge from the hospital.

plaintiff subjectively decides to terminate the physician-patient relationship shared with the defendant, we find that the two-year period of limitations in this case began to run on August 8, 1983. As a result, plaintiff's suit, which was commenced on September 13, 1985, was untimely filed. The motion for summary disposition under MCR 2.116(C)(7) of Dr. Corbett based on the lapse of the applicable two-year period of limitation should have been granted by the trial court.

Reversed.