SHANE v MOUW

Docket No. 52651. Submitted June 10, 1981, at Grand Rapids.—Decided June 8, 1982.

Bernice Shane was treated for an arthritic condition by Dirk Mouw, a medical doctor, from 1961 to 1977. Her last office visit was in July, 1977. On August 7, 1977, Shane's son made a telephone call to Mouw seeking to have Mrs. Shane admitted to a hospital for treatment of what Mouw had diagnosed and treated as arthritis. Mouw refused to hospitalize Mrs. Shane but offered to prescribe additional medication for her. Mrs. Shane was admitted to a hospital, where another doctor diagnosed her condition as gout. On August 2, 1979, Mrs. Shane filed a medical malpractice action against Mouw in Kent Circuit Court. The court, John T. Letts, J., granted defendant's motion for accelerated judgment on the basis that plaintiff's action was barred by the two-year statute of limitations for malpractice. Plaintiff appeals. *Held:*

There is no evidence that the physician-patient relationship between defendant and plaintiff had ceased prior to August 7, 1977, nor that the telephone call made that day on behalf of plaintiff was intended as a device for prolonging the period of limitations. A telephone communication between a physician and patient which takes place after the last examination of the patient may constitute "treating or otherwise serving" the patient as provided in the malpractice statute of limitations. Plaintiff's action was filed within two years of the August 7, 1977, telephone call. The trial court erred in granting accelerated judgment in favor of defendant.

Reversed and remanded for trial.

MacKenzie, J., dissented. She would affirm the lower court's grant of accelerated judgment based on the facts of this case. Plaintiff's refusal to accept defendant's proffered treatment on

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 5] 61 Am Jur 2d, Physicians and Surgeons § 320.

When statute of limitations commences to run against malpractice action against physician, surgeon, dentist, or similar practitioner. 80 ALR2d 368.

[2, 3] 51 Am Jur 2d, Limitation of Actions § 470.

August 7, 1977, does not constitute "treating and otherwise serving the plaintiff" within the meaning of the malpractice statute of limitations. Thus, plaintiff's last treatment by defendant was in July, 1977, more than two years before plaintiff's action was filed. Accelerated judgment was properly granted.

### Opinion of the Court

1. Physicians and Surgeons — Medical Malpractice — Limitation of Actions.

   A telephone conversation between a plaintiff and his physician subsequent to treatment may constitute part of the treating or otherwise serving the plaintiff necessary to provide a basis for a claim for medical malpractice for purposes of determining the running of the period of limitation of such actions (MCL 600.5838[1]; MSA 27A.5838[1]).

2. Physicians and Surgeons — Medical Malpractice — Limitation of Actions.

   A trial court erred in granting accelerated judgment in favor of a defendant doctor in a medical malpractice action on the basis that the two-year statute of limitations barred plaintiff's action where a telephone call was made to the defendant on behalf of the plaintiff within the slightly more than two-year period between plaintiff's last office visit and the filing of her case and the defendant offered to prescribe medication for plaintiff's condition, which he had been treating for 16 years, and there was no evidence that the physician-patient relationship had ceased prior to the making of the telephone call nor that the telephone call was intended as a device for prolonging the period of limitations.

### Dissent by MacKenzie, J.

3. Limitation of Actions — Accelerated Judgments — Court Rules.

   *Accelerated judgment grounded on the statute of limitations is improper where disputed questions of material fact exist (GCR 1963, 116.1[5], 116.3).*

4. Physicians and Surgeons — Medical Malpractice — Limitation of Actions.

   *Whether a telephone conversation between a plaintiff and his physician subsequent to treatment constitutes "treatment or other services" necessary to provide a basis for a claim for medical malpractice for purposes of determining the running of*

*the period of limitation of such actions depends on the nature of the conversation (MCL 600.5838[1]; MSA 27A.5838[1]).*

5. PHYSICIANS AND SURGEONS — MEDICAL MALPRACTICE — LIMITATION OF ACTIONS.

*Neither a doctor's refusal to treat a patient nor a patient's refusal to accept proffered treatment from a doctor is "treatment" within the meaning of the statute limiting the time in which an action for malpractice may be maintained (MCL 600.5838[1]; MSA 27A.5838[1]).*

*Frank S. Spies,* for plaintiff.

*Baxter & Hammond* (by *Joel M. Boyden* and *Phillip J. Nelson),* for defendant on appeal.

Before: D. F. WALSH, P.J., and MacKENZIE and J. R. ERNST,* JJ.

J. R. ERNST, J. The essential facts of this case are accurately set forth in Judge MacKENZIE's dissenting opinion.

Accepting plaintiff's version of the facts as correct for purposes of this appeal, it appears the parties commenced a physician-patient relationship in 1961 which continued into 1977. GCR 1963, 116.3. Between 1965 and May, 1977, plaintiff visited defendant's office 63 times, and defendant regularly prescribed medication for plaintiff's condition.

Plaintiff further claims that she last visited defendant's office in July, 1977. At that time, she asserts, it was necessary for her to use a walker because her "arthritis" had crippled her.

After hospitalizing plaintiff on August 7, 1977, another physician diagnosed plaintiff's condition as gout.

In *DeGrazia v Johnson,* 105 Mich App 356; 306

---

* Circuit judge, sitting on the Court of Appeals by assignment.

NW2d 512 (1981), it was held that under some circumstances a telephone conversation between a physician and patient which takes place after the last examination of the patient may constitute "treating or otherwise serving the plaintiff" pursuant to MCL 600.5838(1); MSA 27A.5838(1).

We agree with the applicability of the rule as stated by the dissent to the present case, but differ in the conclusion to be drawn from the given facts.

Plaintiff and defendant enjoyed a patient-physician relationship for 16 years. Over this period, defendant diagnosed and treated plaintiff for an arthritic condition.

Plaintiff continued to seek treatment from defendant for this medical problem through her son's telephone call on her behalf on August 7, 1977, when her condition had further deteriorated. Defendant refused to hospitalize plaintiff as requested and instead offered to prescribe medication. It was only after this telephone conversation that plaintiff sought the services of another physician.

There is nothing to indicate that the telephone call of August 7, 1977, was intended as a device for prolonging the statute of limitations. On the contrary, it bears all the indicia of a call on behalf of a patient in distress to her long-time personal physician. Similarly, it may be reasonably inferred from defendant's alleged response that an evaluation of plaintiff's condition was made based on past observation and treatment plus information as to the current condition and that defendant then determined a course of treatment including prescribing medication and rejecting hospitalization.

As observed in the dissenting opinion, the physician-patient relationship is consensual; it may be established by a request for treatment and treat-

ment being furnished in response to such request. Moreover, the relationship may be of a continuing nature, as it was between the present parties.

There is no evidence of any occurrence between the parties prior to August 7, 1977, which would indicate that defendant intended to discontinue treating or otherwise serving plaintiff before that date. More significantly, prior to August 7, 1977, there is evidence of nothing which would have alerted plaintiff that her long-standing physician-patient relationship with defendant had ended and that the statutory period of limitations had started to run. In fact, the phone call of August 7, 1977, certainly appears to have been an attempt by defendant to continue treating plaintiff's condition.

Reversed and remanded for trial. Costs to plaintiff.

D. F. WALSH, P.J., concurred.

MACKENZIE, J. (dissenting). I respectfully dissent. Plaintiff's complaint, filed August 2, 1979, alleged medical malpractice. The circuit judge granted defendant's motion for accelerated judgment pursuant to GCR 1963, 116.1(5) on the ground that defendant last treated plaintiff on May 3, 1977, and that plaintiff's action was therefore barred by the two-year statute of limitations for malpractice, MCL 600.5805(4); MSA 27A.5805(4). Accelerated judgment grounded on the statute of limitations is improper where disputed questions of material fact exist. GCR 1963, 116.3. Accordingly, for the purposes of this appeal, we must accept as correct plaintiff's version of the facts. Plaintiff claimed that she last saw defendant in July, 1977. On August 7, 1977, plaintiff's son contacted defendant on plaintiff's behalf and asked that plaintiff be hospitalized. Defendant declined

to permit plaintiff's hospitalization and suggested that he prescribe additional medication for plaintiff. Plaintiff was then admitted to a hospital under the care of another doctor.

MCL 600.5838(1); MSA 27A.5838(1) provides in relevant part:

> "A claim based on the malpractice of * * * a member of a state licensed profession * * * accrues at the time that person discontinues treating or otherwise serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose."

In *Dyke v Richard,* 390 Mich 739, 744; 213 NW2d 185 (1973), the Court explained that the foregoing statute was based on the rule stated in *DeHaan v Winter,* 258 Mich 293, 296-297; 241 NW 923 (1932):

> "When did plaintiff's cause of action accrue? Until treatment of the fracture ceased the relations of patient and physican continued, and the statute of limitations did not run. *Schmit v Esser,* 183 Minn 354 (236 NW 622), and reported with annotations in 74 ALR 1312. While decisions are not in accord upon this question, we are satisfied that in such an action as this the statute of limitations does not commence to run while treatment of the fracture continues. Failure to give needed continued care and treatment, under opportunity and obligation to do so, would constitute malpractice. During the course of treatment plaintiff was not put to inquiry relative to the treatment accorded him."

In some cases, a telephone conversation between physician and patient which takes place after the last examination of the patient may constitute "treatment or other services". *DeGrazia v Johnson,* 105 Mich App 356; 306 NW2d 512 (1981). In

*DeGrazia,* the Court emphasized that it was deal-
ing with a unique factual situation. The Court
noted that the conversation took place approxi-
mately one month after the last examination,
referred to the patient's knee on which the doctor
had operated, and did not appear to have been a
device, when it occurred, for prolonging the period
of limitations. In view of the *DeGrazia* Court's
emphasis on the unique nature of the factual
situation it faced, we cannot read *DeGrazia* as
establishing a rule that all telephone conversa-
tions between physician and patient which refer to
the patient's condition constitute "treatment or
other services". Whether such a conversation con-
stitutes "treatment or other services" depends on
the nature of the conversation.

In *Kelleher v Mills,* 70 Mich App 360, 365-366;
245 NW2d 749 (1976), the Court said:

"We reject any suggestion that refusal to treat is
'treating or otherwise serving the plaintiff' within the
meaning of MCL 600.5838; MSA 27A.5838. To hold as
such, would for all practical purposes, extend the stat-
ute of limitations indefinitely. Plaintiffs could continu-
ally request treatment to extend the statute of limita-
tions against a doctor who had previously terminated
service to the plaintiff." (Footnote omitted.)

Plaintiff attempts to distinguish *Kelleher* here
by pointing to defendant's offer to prescribe addi-
tional medication. *Kelleher* is distinguishable;
what happended in the present case was not that
defendant refused to treat, but that plaintiff re-
fused treatment. However, I am not persuaded
that such a distinction should make a difference to
the outcome of the case. *DeHaan* shows that the
statute was designed to prevent the running of the
period of limitations during the existence of the

physician-patient relationship. Such a relationship is consensual; it is no more established by a refusal to accept treatment than by a refusal to treat.

Plaintiff's reliance on *Thomas v Golden (Amended Opinion)*, 51 Mich App 693, 695; 214 NW2d 907 (1974), is similarly misplaced. In that case, the Court said:

"The crucial issue for decision is whether the granting of an appointment by defendant to plaintiff at her request constitutes 'otherwise serving' within the meaning of the statute. We hold that it does, even though the appointment was not kept and defendant did nothing further for plaintiff."

The activity which the court in *Thomas* found to constitute "otherwise serving" plaintiff was an activity which defendant performed at plaintiff's request. *Thomas* would seem to be of uncertain precedential value since the Supreme Court affirmed the decision but declined to adopt the reasoning set forth in the Court of Appeals opinion. *Thomas v Golden,* 392 Mich 779 (1974). To the extent that *Thomas* is inconsistent with the result I reach here, I would decline to follow that opinion. I would affirm.