BOSEL v BABCOCK

Docket No. 86992. Submitted May 22, 1986, at Detroit. Decided June 20, 1986.

Plaintiff, Matthew Bosel, after fracturing his leg, received treatment by defendant Allen Babcock, M.D. The course of treatment included surgery on two separate occasions to implant a Zickle nail into plaintiff's left femur to hold the bone in place and allow the leg to heal properly. After the surgical procedures proved to be unsuccessful, plaintiff elected to undergo a different course of treatment by another physician. Plaintiff subsequently filed a malpractice action in the Oakland Circuit Court against defendants Allen Babcock, M.D., and Crittenton Hospital. Defendant Babcock moved for accelerated judgment, arguing that plaintiff's action was not timely filed pursuant to the two-year statutory period of limitations for medical malpractice actions. The trial court, Fred M. Mester, J., granted the motion and dismissed plaintiff's complaint. Plaintiff appealed. *Held:*

The trial court did not err in ruling that a conversation between plaintiff and defendant Babcock, at a time when plaintiff was already under the exclusive care by the other physician, did not constitute the treatment or otherwise serving plaintiff necessary to provide a basis for a claim for medical malpractice for purposes of determining the running of the period of limitations for medical malpractice actions.

Affirmed.

LIMITATION OF ACTIONS — MALPRACTICE — STATUTES.

A conversation between a plaintiff and his former physician, when at the time of the conversation the plaintiff was already under the exclusive care of another physician at the suggestion of the former physician, does not constitute part of the treating

REFERENCES

Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 316-325.

Time of discovery as affecting running of statute of limitations in wrongful death action. 49 ALR4th 972.

When statute of limitations commences to run against malpractice action based on leaving foreign substance in patient's body. 70 ALR3d 7.

or otherwise serving the plaintiff necessary to provide a basis for a claim for medical malpractice against the former physician for purposes of determining the running of the period of limitations for such actions (MCL 600.5838[1]; MSA 27A.5838[1]).

*Baumgartner & Gricius, P.C.* (by *Ronald J. Gricius*), for plaintiff.

*Kerr, Russell & Weber* (by *Patrick McLain*), for defendant Babcock.

Before: MacKenzie, P.J., and Beasley and C. W. Simon,* JJ.

Per Curiam. On March 23, 1984, plaintiff, Matthew Bosel, filed suit against defendant, Dr. Allen Babcock, M.D., alleging that defendant doctor had committed medical malpractice in treating plaintiff's fractured leg. Defendant moved for accelerated judgment under GCR 1963, 116.1(5), now MCR 2.116(C)(7), asserting that plaintiff's claim was barred by the applicable statute of limitations.[1] After an evidentiary hearing, the trial judge granted defendant's motion for accelerated judgment and dismissed plaintiff's action. Plaintiff appeals as of right.

The factual setting surrounding plaintiff's claim in this matter is essentially undisputed. The record of the hearing conducted reveals that plaintiff suffered a fracture of his left thigh bone in an automobile accident on December 16, 1978. Plaintiff was immediately taken to a hospital where defendant doctor performed surgery on his leg. The surgical procedure involved placing a "Zickle nail" into plaintiff's left femur in order to hold the bone in place and allow the leg to heal properly.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCL 600.5805(4); MSA 27A.5805(4).

On April 23, 1980, defendant surgically removed the Zickle nail from plaintiff's leg. However, shortly after this operation, plaintiff's left thigh bone was refractured and a second Zickle nail was surgically placed in plaintiff's left femur by defendant doctor. On February 23, 1982, defendant removed the second Zickle nail from plaintiff's leg. Shortly after the operation, plaintiff's left thigh bone was again refractured.

Due to his lack of success in treating plaintiff's fractured leg, defendant advised plaintiff that he could either attempt treatment with a third Zickle nail or he could transfer plaintiff to another hospital for a different treatment by other doctors. Plaintiff decided to transfer to the other hospital and to receive treatment from another physician, Dr. Guise. Defendant, prior to his transfer of plaintiff, had told plaintiff that he would be happy to follow up the care of plaintiff at his office. On February 26, 1982, plaintiff was transferred to the other hospital, where he received initial treatment and follow-up care solely from Dr. Guise. Plaintiff never sought follow-up care from defendant and defendant doctor did not treat plaintiff after his transfer to Dr. Guise.

However, on April 14, 1982, plaintiff went to defendant's office in order to return some of the equipment owned by defendant which was related to the Zickle nail treatment. While plaintiff was at the reception desk in defendant's office, defendant noticed him and had a brief conversation with him. During this brief conversation, defendant advised plaintiff that he could assist plaintiff in receiving physical therapy services close to plaintiff's home. Plaintiff declined to take advantage of defendant's offer, since he was satisfied with the services of Dr. Guise. Plaintiff was not examined by defendant during this office visit and, in fact,

plaintiff testified that, pursuant to his attorney's instructions, he was trying to avoid any contact with defendant while returning the equipment as he was, at that time, considering a medical malpractice claim against defendant. Eventually, as indicated, plaintiff did file a medical malpractice claim against defendant on March 23, 1984.

On appeal, plaintiff argues that the trial judge erred in finding that plaintiff's malpractice claim against defendant accrued on February 26, 1982, under MCL 600.5838(1); MSA 27A.5838(1), and in concluding that the applicable two-year period of limitation had run at the time plaintiff filed this action on March 23, 1984. In making this argument, plaintiff asserts that the trial judge erroneously held that defendant discontinued "treating or otherwise serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose" on February 26, 1982, when he was transferred to another hospital for treatment by Dr. Guise. Plaintiff goes on to assert that defendant did not discontinue treating or otherwise serving him until April 14, 1982, when they had the brief conversation in defendant's office and, thus, he filed his claim within the two-year limitations period.

We disagree with plaintiff's argument in this case. The two prior decisions of this Court relied on by plaintiff in making his argument in this case are clearly distinguishable on the facts. In both *DeGrazia v Johnson*[2] and *Shane v, Mouw*,[3] the panels pointed to the fact that there was no evidence of any occurrence between the parties prior to their phone conversations which would indicate that defendant intended to discontinue treating or otherwise serving plaintiff. Both the *DeGrazia* and

[2] 105 Mich App 356; 306 NW2d 512 (1981).

[3] 116 Mich App 737; 323 NW2d 537 (1982).

*Shane* panels went on to conclude that in such an unusual factual situation, a telephone conversation, which takes place after the last examination of the plaintiff by the defendant, constitutes treating or serving the plaintiff.

However, the within case does not present the unusual factual situation addressed in *DeGrazia* and *Shane*. In this case, there was an occurrence between the parties which clearly indicated that both parties intended that defendant discontinue treating or serving plaintiff prior to their conversation on April 14, 1982. On February 26, 1982, plaintiff was transferred to another hospital for treatment to be solely performed by another doctor. Plaintiff testified that after he was transferred and throughout the remainder of his follow-up care, he considered Dr. Guise to be the doctor who was treating his fracture. Defendant testified that he certainly did not consider the parties' brief conversation on April 14, 1982, as a patient visit.

Due to the occurrence of the transfer of plaintiff to a different hospital for treatment by a different doctor, we conclude that defendant discontinued treating or serving plaintiff on February 26, 1982. At that point, the parties' on-going patient-physician relationship ceased, and the limitations period began to run.[4] The parties' subsequent brief conversation on April 14, 1982, did not constitute a continuation or revival of defendant doctor's treating or serving plaintiff for purposes of MCL 600.5838(1); MSA 27A.5838(1). The mere fact that defendant offered to arrange physical therapy for plaintiff did not convert the conversation into a continuation of treatment or service. Plaintiff, on April 14, 1982, by his own admission, was attempting to avoid any encounter with defendant and completely spurned his offers of assistance.

[4] *Heisler v Rogers,* 113 Mich App 630, 633; 318 NW2d 503 (1982).

In the factual situation presented in this case, the trial judge did not err in finding that defendant discontinued treating or serving plaintiff on February 26, 1982, and in concluding that plaintiff's cause of action accrued on February 26, 1982, for purposes of applying the appropriate statute of limitations. Therefore, the trial judge did not err in granting defendant's motion for accelerated judgment based on the fact that plaintiff was barred from bringing this action on March 23, 1984, since the applicable two-year period of limitation had run.

Affirmed.