**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a0372n.06

**No. 09-2604**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Apr 06, 2012*

LEONARD GREEN, Clerk

| | |
|---|---|
| GEORGE KUTLENIOS, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR |
| | ) THE EASTERN DISTRICT OF |
| UNUMPROVIDENT CORP., et al., | ) MICHIGAN |
| | ) |
| Defendants-Appellees, | ) |
| | ) |
| ROBERT A. CORREA, | ) |
| | ) |
| Defendant-Appellee. | ) |

Before: BATCHELDER, Chief Judge; SILER and COLE, Circuit Judges.

**SILER, Circuit Judge.** George Kutlenios petitions for review the district court's granting summary judgment for UnumProvident Corp. and Robert A. Correa. Kutlenios sued Unum when the company rescinded his disability insurance policy and subsequently sued Correa, the insurance broker, for negligence during the insurance application process. The district court granted Unum's motion pursuant to the terms of the insurance contract and later granted Correa's motion because the suit was barred by the statute of limitations. For the following reasons, we affirm the district court's ruling on Unum's motion and reverse the district court on Correa's motion.

I.

A.

No. 09-2604
*Kutlenios v. UnumProvident Crop., et al.*

On March 1, 2004, Kutlenios applied for disability income insurance from Unum with the help of his insurance agent Correa, who had sold Kutlenios insurance related to Kutlenios's business for the past fifteen years. Kutlenios attested on the application that he had read the application and his answers to the questions on the application and that his answers were true, complete and correctly recorded on the application. He also acknowledged that he understood that if his answers were incorrect or untrue that Unum could deny his benefits or rescind his policy. But Kutlenios left unanswered the medical information portion of the application, which asked 20 questions about his health.

Unum rejected Kutlenios's application because the medical information section was incomplete. It returned the application to Correa with instructions to complete the application. Kutlenios's application was resubmitted to Unum with all of the questions answered "no" with the exception of question nine, which was still unanswered. One of the questions on the application with the answer "no" was, "Have you ever been diagnosed by a member of the medical profession as having or treated for. . . injury, disease or disorder of the spine, neck, back, extremities, including muscles, bones, joints, amputations or any chronic painful condition, neuritis, neuralgia or neuropathy, sciatica, arthritis or gout?"

Subsequently, Unum contacted Kutlenios for a "phone history interview" as part of the application process. The Unum agent asked Kutlenios questions about his health including the unanswered question nine, which read "Have you, in the last five years, seen any doctor or medical practitioner not otherwise listed on this application?" Kutlenios answered "no."

Based on the information provided on the application, Unum issued Kutlenios a disability policy that was effective on May 20, 2004. Unum tendered the policy to Correa, who gave it to Kutlenios. The policy contained an "incontestability clause" that prevented Unum from denying Kutlenios benefits because of a misstatement or omission on the application two years after the policy's effective date, with the exception for fraudulent misstatements or omissions.

On June 15, 2006, two years and three weeks after the policy's effective date, Kutlenios filed a claim for disability benefits. He stated he was suffering from "ankylosing spondylitis" (A/S), a type of arthritis that causes vertebrae in the spine to fuse together. The physician statement from Dr. David Schwartz that accompanied the claim revealed that Kutlenios first saw Dr. Schwartz for A/S on April 9, 2003, nearly a year before Kutlenios applied for his policy.

After receiving the claim, Unum sought more information about Kutlenios's medical history. Unum's investigation revealed that Kutlenios sought treatment for A/S in 1998. It also discovered a December 5, 2000 x-ray and a May 23, 2001 report that indicated that Kutlenios was suffering from spinal issues consistent with A/S. A June 28, 2001 report noted symptoms "consistent with [Kutlenios's] history of [A/S]," and a July 3, 2001 medical record contained an x-ray report that confirms Kutlenios was suffering from A/S.

In March 2007, Unum denied Kutlenios's benefits claim and rescinded his policy based on his misstatements on his application regarding his medical history.

## B.

Kutlenios sued Unum for his benefits and Correa for malpractice. The district court granted summary judgment to Unum because of Kutlenios's material misrepresentations and omissions in

No. 09-2604
*Kutlenios v. UnumProvident Crop., et al.*

his insurance application and to Correa because Kutlenios filed suit beyond Michigan's statute of

limitations.

II.

This court reviews rulings on motions for summary judgment *de novo*. *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611 (6th Cir. 2009). In a diversity case, we apply the law of the forum state and federal procedure law. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). In Michigan a policy may be rescinded, "when the insured makes a material misrepresentation in the application for insurance. A misrepresentation is material if the insurer would have charged a higher premium or not accepted the risk had it known the true facts." *Old Life Ins. Co. of America v. Garcia*, 411 F.3d 605, 611 (6th Cir. 2005) (citations omitted).

"Common law has always permitted the avoidance of a contract procured by means of fraud," *Wiedmayer v. Midland Mut. Life Ins. Co.*, 324 N.W.2d 752, 755 (Mich. 1982) (citation omitted). Fraud occurs when a someone knowingly makes a materially false representation or recklessly makes a materially false representation without regard to its veracity with the intent that the statement be relied on by another party and that other party suffers an injury. *Hi-Way Motor Co. v. International Harvester Co.*, 247 N.W.2d 813, 815-16 (Mich. 1976).

Michigan insurance brokers must be licensed. M.C.L. § 500.1201a. And malpractice claims against state licensed professionals accrue "at the time [the licensed professional] discontinues serving the plaintiff. . . as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." M.C.L. § 600.5838. Malpractice claims may be filed at any time within two years after the claim accrues, M.C.L. § 600.5805(6), or "within 6 months after the plaintiff discovers or should have discovered the

existence of the claim, whichever is later." M.C.L. § 600.5838. If the claim is not filed within the prescribed time periods then it is barred. *Id.*

III.

A.

Kutlenios's Claim Against Unum

In Michigan an insured is charged with knowledge of the information in an insurance application. *See Ruggirello v. Detroit Automobile Inter-Insurance Exchange*, 260 N.W. 787, 788 (Mich. 1935).

Kutlenios omitted the fact on his application that he was suffering with A/S. He had suffered from A/S for several years before he applied for a disability policy. Kutlenios's physician for his disability claim stated that he first saw Kutlenios for A/S on April 9, 2003, nearly a year before Kutlenios applied for his policy. When the application asked if he had ever been diagnosed or treated for an injury, disease or disorder of the spine, neck, back, or any chronic painful condition he answered "no."

Unum stated it would not have issued a policy to Kutlenios if it had known about his A/S. Thus, Unum suffered an injury when it relied on Kutlenios's misstated medical history.

Since it is clear that Kutlenios falsely answered questions to obtain his disability policy, it is unnecessary to analyze the "incontestability clause" to rescind the policy. The district court's ruling is affirmed.

B.

Kutlenios's Claim Against Correa

Whether Kutlenios can pursue a claim against Correa depends on when that claim accrued. The district court ruled that under Michigan's two-year statute of limitations Kutlenios had until May 20, 2006–two years after the policy was issued–to bring a claim and under the state's six month "discovery" statue of limitations he had until September 2007–six months after Unum denied Kutlenios's benefits–to file suit. Kutlenios filed his lawsuit against Correa on March 26, 2008.

Kutlenios argues that his claim against Correa did not accrue until Unum rescinded the policy in 2007. Because Correa attempted to help Kutlenios receive his benefits he continued to serve Kutlenios and did not end his services for Kutlenios until the policy was rescinded. Therefore, Kutlenios argues, the two-year period did not begin until 2007 and would expire in 2009, which is after he filed his lawsuit against Correa. We agree.

*Levy v. Martin*, 620 N.W.2d 292 (Mich. 2001), and *Morgan v. Taylor*, 451 N.W.2d 852 (Mich. 1990), hold that when a professional provides routine, periodic, or related services, a claim of liability does not accrue until the services end. Correa continued to serve Kutlenios by helping Kutlenios pursue benefits under his disability policy. Kutlenios also claims he continued to be one of Correa's clients for other insurance purposes, and thus he had a "continuing professional relationship" as described in *Levy*, 620 N.W.2d at 296, and *Morgan*, 451 N.W.2d at 859. And at the summary judgment stage we must accept Kutlenios's claim. *See Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011) ("we view all facts in a light most favorable to the non-moving party and draw inferences in favor of the non-movant.").

In *Morgan*, the court held that "the matter[] out of which the claim . . . arose" was not one discrete eye exam, but rather the whole relationship. 451 N.W.2d at 856. In *Levy*, it was not one discrete tax return, but rather the whole relationship. 620 N.W.2d at 297. Here, it was not one discrete insurance policy, but rather the whole relationship. Based on the record and Michigan's broad view of professional relationships, the relationship between Kutlenios and Correa was ongoing well past the time when Unum denied the claim. Therefore, under Michigan case law, the statute of limitations does not bar Kutlenios's claim against Correa.

**AFFIRMED** in part, **REVERSED** in part and **REMANDED** to the district court for proceedings consistent with this opinion.

No. 09-2604
*Kutlenios v. UnumProvident Crop., et al.*

**ALICE M. BATCHELDER, Chief Judge, concurring.** I write separately because I differ with my colleagues on the basis for affirming the grant of summary judgment to Unum.

The district court granted Unum's motion for summary judgment based on its finding that Kutlenios had made material misrepresentations in his application or omitted material facts from it. The district court expressly declined to reach Unum's alternative claim that Kutlenios had committed fraud. The district court also, correspondingly, denied Kutlenios's opposing motion for summary judgment, *see* Plaintiff's "Motion for Summary Disposition against Unum on the Issue of Fraud," in which he explained why any misrepresentations (or omissions) had not been fraudulent.

The majority opinion expressly ignores the district court's basis for granting summary judgment to Unum (that even innocent misrepresentations in the application void the policy) and instead, it appears, affirms on Unum's alternative basis (that Kutlenios committed fraud). While we may "affirm on any basis supported by the record," *EA Mgmt. v. JP Morgan Chase Bank, N.A.*, 655 F.3d 573, 575 (6th Cir. 2011), I am not entirely certain that the record here fully supports a finding of fraud, *see* R. 37 at 15-16, particularly in this summary-judgment posture, in which all factual inferences are drawn in favor of the non-moving party, Kutlenios. Moreover, I do not believe that it is necessary to make such a finding, as the district court was correct in its analysis and conclusion.

It is beyond dispute that the application contains misstatements or omissions concerning Kutlenios's medical history, and those misstatements are attributable to him. Kutlenios argues that the insurance policy's incontestability clause protects him. That incontestability clause states:

> After two years from the Effective Date of this Policy, no misstatements or omissions, except fraudulent misstatements or omissions, made by You in the

application for this Policy will be used to void or Contest the Policy or to deny a claim for loss incurred or Disability that starts after the end of such two year period.

Because Kutlenios filed his claim after two years from the effective date, and accepting the district court's suggestion that the evidence is insufficient (at least at this summary-judgment stage) to prove fraud, the part of the clause that remains operative can be re-stated as: no misstatements or omissions will be used to deny a claim for a disability that starts after the end of the two year period.

Given this clause, the question is thus whether Kutlenios's claimed disability had begun before the end of the two year period. The district court found evidence in the record that it had, namely: Kutlenious's medical history (dating back to at least 1998), Dr. Schwartz's statement appended to the claim (that Kutlenios had come to him in April 2003), and Kutlenios's own deposition testimony (that he had reduced his working hours in March 2006, due to his disability).

Kutlenios argues that neither his condition nor his medical care satisfies the definitions of Disability, Residual Disability, and Physician's Care as written in the Policy, which are:

Disability . . . means that You are Totally Disabled or Residually Disabled. . . .

Residual Disability . . . means that You are not Totally Disabled, but due to Injury or Sickness:
1.    You are unable to perform one or more of the material and substantial duties of Your Occupation . . . . for as long as normally required to perform them; and
2.    You are receiving Physician's Care. . . .

Physician's Care means the regular and personal care of a Physician as frequently as is medically required according to standard medical practices, and which, under prevailing medical standards, is appropriate for the condition causing the Disability.

Kutlenios argues that, during the two-year period from May 2004 to May 2006, he was not receiving "regular" treatment for his AS and, therefore, was not receiving "physician's care" as

defined in the Policy, so he was not "residually disabled" as defined in the Policy; hence, the incontestability clause applies. But this assertion — that he was not receiving "regular treatment" — is not correct given his numerous office visits, tests, diagnoses, and treatment plans. The record demonstrates, beyond any legitimate dispute, that Kutlenios was under physician's care for his AS during the period from May 2004 to May 2006 and, therefore, Unum was within its rights to void the policy based on the misstatements in the application (even if innocently made).

I would affirm the grant of summary judgment to Unum on this basis.